Good morning, Your Honors. May it please the Court, Jonathan Libby appearing on behalf of Appellant Paul Grennan. Your Honors, this case challenges two special conditions of supervised release. First, Condition 10, imposed as part of sex offender treatment, that Mr. Grennan submit to plethysmograph and able testing, polygraph testing, and that he take all prescribed medication. With respect to the plethysmograph testing, the government concedes that in light of United States v. Weber, there must be a remand on that issue because the Court simply did not make any findings with respect to the necessity of the plethysmograph testing. With respect to able testing, we submit that able testing should be subjected to the same type of requirements that this Court requires for plethysmograph testing in the Weber decision. Kennedy. It's much less intrusive, isn't it? GRENNAN Well, it's certainly much less physically intrusive. I'm not sure that it's necessarily much less intrusive into state of mind, and that's certainly what the Court talked a lot about in the Weber decision. We certainly still have the same problems with able testing in terms of its unreliability, that it's not universally accepted in the medical community. I would bring to the Court's attention a case which was not cited in the briefs, a district court case, United States v. Birdsville, 243 Fed subsequent 1128 from the District of Montana, which refused to accept able testing and any evidence of able testing, goes through a very detailed explanation for how it is unreliable and how the standards are in fact unknown, that Dr. Abel keeps the standards for this test to himself, that they're proprietary. And so ---- Kennedy. Did you give that cite to the government prior to this? GRENNAN I did not, Your Honor. Kennedy. Okay. GRENNAN I just discovered it last night. Kennedy. Why don't we ---- you can give it to the clerk, and then it will be distributed to the panel afterwards. GRENNAN Will do. And that decision was affirmed in an unpublished decision by a merits panel of this Court, which actually consisted of judges Canby, Wardlaw, and Gould. Kennedy. Do you have a citation for that one? GRENNAN Well, it was affirmed 97 Federal Appendix 721. Kennedy. And the cite on the case is for 243 Fed subsequent? GRENNAN 243 Fed subsequent 1128. Kennedy. 1128. Okay. And the name is? GRENNAN United States v. Birdsville, B-I-R-D-S-B-I-L-L. Kennedy. Okay. Is that a Judge Malloy's decision? GRENNAN Judge ---- beg your pardon? Kennedy. Judge Malloy's decision. GRENNAN It was Judge Lavelle's decision. Kennedy. And your other case is probably from prior to January 1st, so it can't be cited. GRENNAN That's true. But the district court case certainly is something that this Court can consider, and can certainly consider the detail that the Court went through in discussing ABLE testing, and also collected various cases from across the country that have not allowed ABLE testing to be admitted as evidence. In fact, it discusses one court which compared Dr. ABLE's formula, and I quote, to the magic of young Harry Potter's mixing potions at the Hogwarts School of Witchcraft and Wizardry. This is ABLE testing. Kennedy. Oh, so we all know that works. GRENNAN Yes. Kennedy. So what's your point? GRENNAN So, you know, ABLE testing is something that, like the placism graph, is very controversial. Kennedy. Of course, the fact that it's not admissible, it's also true of polygraph, and I know you have a polygraph argument, but they might be used in therapy even if it's inadmissible. GRENNAN Well, and that raises another point. The use of ABLE testing generally applies to the treatment of admitted pedophiles. Mr. Grennan is certainly not an admitted pedophile. He's not a diagnosed pedophile. He claims he's certainly not a pedophile. So he's been required to be subjected to this tool, which is simply not applicable to someone with his background, which is not an appropriate basis for a supervised release condition. And if I – I would also note that whether or not this Court applies the same type of standards from Weber to ABLE testing, the fact remains the government had the burden of establishing the necessity of the ABLE testing as a condition of release. They submitted no evidence whatsoever for why ABLE testing was appropriate in this case. In fact, the probation officer, in response to our objections, gave detailed explanations for why placism graph and polygraph testing is beneficial in general in sex offender treatment, but made no mention of the ABLE testing. So there's simply no evidence in the record for why ABLE testing should have been imposed here. With respect to the polygraph testing, this Court's decision in antelope certainly recognizes that an individual has – still has a Fifth Amendment right in the course of sex offender treatment to refuse to answer questions that might tend to incriminate him. The problem, of course, though, is while it's clear, and Weber in a footnote discusses antelope and says it's very clear that the polygraph testing is limited to that extent that the defendant can refuse to answer questions, that's not made clear in the condition itself. And we would submit that that is something that should at least be made clear in the condition that the defendant has the right to refuse to answer questions. It's – and the Supreme Court in Miranda talked about it. It's fine and good to say a defendant has the right to refuse to answer questions. But if you're not advised of that right, it's pretty meaningless. And we have a situation here where, while it may be true Mr. Grennan has the right to refuse to answer questions, if he's not advised of that right, it's pretty meaningless. So we would submit that the condition should at least be ordered modified. Kennedy, was that suggestion ever made to the district court? That specific suggestion, no. It was argued to the district court that the condition violated his Fifth Amendment privileges. And so there we have it with the polygraph, Your Honor. And with respect to the forced medication condition, the condition says that he must take all prescribed medications. It doesn't specify what those medications might be. Certainly there's nothing in the record to indicate that he had ever been required to take any type of medications. The fact that this has been ordered as part of sex offender treatment raises serious questions as to what those medications might be. And under this Court's decision in Williams, the Court simply did not give any basis for why there was a need to force him to take these unknown medications. So we would submit that, in light of Williams, that also must be struck. The other condition that we've challenged in this case, Condition 12, is a condition that prohibits Mr. Grenner from possessing any pornographic materials that depict or describe sexually explicit conduct as described by statute as determined by the district court. This was not the original condition proposed by probation. We had objected, saying that it was overbroad, that it included things like R-rated movies, anything that had a simulated sex scene in it. The Court pretty much agreed with us that it was overbroad to that extent. And so in an attempt to clarify it, the Court indicated that it would he would not, Judge John Carter would not violate him for viewing R-rated movies, but he did not amend the condition to make that clear. And it's certainly very possible that Mr. Grenner can be supervised in a different district. The Court also added the term pornographic, which this Court in Gagliardo has said is a vague term. So the Court, in an attempt to clarify that this should really only apply to adult pornography, used the term that this Court said it can't use, which is pornography. And in fact, the Court, Judge Carter himself, said after imposing the condition, I have trouble describing what pornography is, but we'll leave it at that. And then said, we'll leave it to my determination on a case-by-case basis what in fact violates the condition. That, of course, does not give any notice to Mr. Brennan as to what he can and cannot look at. It's fine to say the Court has something submitted to it. I mean, always the Court's going to ultimately make a determination. But isn't that, isn't the way it's worded, the sexually explicit conduct or material, it's referenced, it references 18 U.S.C. section 2256-2. Doesn't that limit it? Well, I'm not sure, because again, it still uses the term pornographic materials. So I think it's both ways of trying to clarify, but in the end, it's not entirely clear, and the Court itself acknowledged it's not really clear, which is why, you know, I'll just have probation submit something that it thinks might be objectionable to me, and I'll make that determination. But that doesn't give Mr. Brennan any notice of what might be objectionable. And with that, I'll reserve the balance. Thank you, Counsel.  May it please the Court? Good morning, Your Honors. My name is Richard Lee. I represent the United States of America. I wanted to begin this morning's discussion with sort of a general philosophical view of what the purpose of supervised release conditions are. The purpose of supervised release conditions is not to be punitive to the defendant once he's released from prison. It's to achieve three goals set forth in the statute, deterrence, rehabilitation, as well as protection of the public. And specifically, the condition relating to sex offender treatment goes towards the goals of rehabilitation and protection of the public. If you believe that a defendant of this nature who commits these sorts of crimes can, in fact, be rehabilitated, the district court has to give the treatment providers the tools that they need in order to achieve that rehabilitation. It is, seems to me, an untenable position to handcuff the treatment providers by not allowing them to have the tools that they need to provide the types of treatment. And I think defendant's position, when taken to its logical extreme, abandons the notion of rehabilitation under the guise of we need to seek the least restrictive alternative. This is a case that deals with a sex offender who victimized an actual 15-year-old girl. And I know that during the opening remarks, Mr. Libby referred to the fact that his client was not a pedophile and that he's not an admitted pedophile and there's nothing in his background that would be applicable to that. Well, I would take some issue with some of those statements, at least the strength of those statements. And I think that in this case, the purpose of placing him in sex offender treatment, along with the conditions of subjecting him to objective testing, such as able testing and polygraph testing, as well as medication, goes towards that ultimate purpose. Well, since this case was litigated and since sentence was imposed, we have antelope was decided and Weber was decided. What would be wrong with just remanding to the district court for reconsideration of those conditions in light of antelope and Weber? I think what would be wrong with doing that is... He has to go back anyway. You can say that. That's true, Your Honor. I think that if this Court looks at the scope of the precedent regarding supervised release conditions, the landscape is, in general, supervised release conditions are generally given broad deference or the district court's decision to impose supervised release conditions is given broad deference. And the conditions generally do not have to be specifically articulated as to their justification in this circuit, as long as they are reasonably related to one of those three goals I mentioned earlier. What we really have in Weber is an exception to that general rule. And it's because it implicates a particularly significant liberty interest in that regard. And with regards to antelope, I think that this situation is distinguishable from the facts of antelope. There are a number of reasons for that which are set forth in the government's brief. But just to briefly address the Court's concerns, this isn't a situation like it was in antelope where he refused to answer questions. The district court in that situation then gave him a penalty for exercising his Fifth Amendment right. We don't have any of those facts here. We don't know if that's going to be a situation that's going to arise. And so it seems to me an unnecessary exercise to ask the district court to clarify both the ABLE testing condition and the polygraph condition simply because the Weber and antelope cases came out, because I think those cases are in fact distinguishable. With regards to ABLE testing specifically. The district court's findings might be strengthened on remand, putting you in a more defensible position. That's a possible outcome, too. That's true, Your Honor. But I don't think that the district court's position needs to be strengthened because the district court should be given deference to impose those conditions where they don't impact a particularly significant liberty interest. And that's essentially what's going on with the ABLE test. As the Weber panel noted, including Judge Canby, the plethysmograph test is a particularly — is a test that evokes a strong reaction in people, particularly because of the design of the test and what it measures, the duration of the test. And specifically in addressing how significant that impact is on a person's liberty interest, the court there indicated that there were significantly — there were other tests that were less intrusive, such as polygraph, such as ABLE testing. And the inquiry isn't, as counsel would suggest, whether it's medically reliable, whether the results are useful. The inquiry really is, is this a test that impacts a particularly significant liberty interest? And if it does, then we're going to trigger that exception. We're going to trigger that higher scrutiny. That's simply not the situation here. Reliability, though, does go into things like, I mean, your opening where you say we've got to give the treatment personnel a free hand and stuff. If it's essentially junk science, I don't know how much of a free hand we have to give them. And I agree with you, Your Honor. I haven't read the case that was presented for the first time this morning. I think that there is literature, as at least the Weber panel pointed out, that goes both ways, that criticizes the reliability of the ABLE test in addition to other authority that applauds the use of the ABLE test. So I don't think that it should be assumed that the ABLE test is, quote, junk science. No, I think what gives me pause, and I have not read the case either, but if, in fact, a district court in our circuit has struck it down as unreliable and it's been affirmed even in an unpublished decision, then we have some inconsistency that we need to resolve in a published opinion. And ABLE testing appears to be used more and more, so it's not a trivial question. Well, and I don't think that this Court is obviously bound by a district court opinion. No, no, I'm not suggesting that at all. I'm just saying that that gives me a bit of pause. And I don't know the context of that decision. I don't know what the purpose of it is. I will say that with regards to sex offenders treatment, it is generally insufficient to rely solely on their own self-reporting. People tend to minimize their involvement in the offense. People tend to just, frankly, be less than candid about it. And you need some of these objective-type measures, ABLE testing, polygraph, to confront these individuals and to get them over that initial hump of denial, so to speak, to get them to recognize that there may be some issues here, and then address those with treatment methods to teach them avoidance issues, to try and get them to avoid putting themselves in situations where they might run into problems later on. It might have been beneficial if the district court had had the benefit of the analysis that we're talking about in the case that has not been cited to us in making that decision. Because when I read the transcript, he doesn't make any findings that any of the three forms of testing are reasonably related to the goals of 3553. Well, I think Judge Carter did recognize that this is an individual who is in need of total rehabilitation, and I think that is the quote that's cited. And in recognizing that these tests, and that was briefed to him that these tests have some use to them, I think that is the basis in which he made that decision. I would like to spend a little time on the medication condition. With regards to the medication, this case is a far cry from the facts set forth in Williams. Williams involved a defendant who was involuntarily medicated with antipsychotic medication pretrial. He was sentenced to a term of time served, and his supervised release condition was immediately to be imposed, which was to continue that involuntary medication. But there are no findings here, right? There are no findings here. So how can we analyze that? I mean, I don't think that a district court can just generically say you have to take all prescribed medication to every defendant. You'd agree with that. It's more, from my perspective. Well, I think, for example, it could be remedies for flu, cold, whatever, and that would not be related in any respect to the rehabilitation of the defendant. I understand your point, Your Honor. My point is, under a plain error analysis, this Court can affirm the district court's decision because, especially on this particular record with this particular district court judge, he states repeatedly throughout the record that you always have an invitation to come back to court and to tweak the modification, to tweak the treatment modality, I think he says. That's the excerpt of Record of Page 163. You always know that you have an open door if you disagree with the treatment modality. In this particular factual situation, the error, if it is in fact error, doesn't affect the integrity of the process or the fairness of the process. I can't say that it would be plainly erroneous, assuming that the medication conditions were, inartfully worded as it may be, error itself. Unless the Court has any specific other questions, I'll stay. Any further questions? If we have to send it back anyway, I suppose it wouldn't hurt to have the district court think about why we have a take-off prescribed medication clause in there. Well, and, Your Honor, this — and I want to emphasize that this really is a different case than Williams. This is a case where you would be asking a district court to anticipate what treatment drugs he may need without the benefit of ever having met the treatment provider, without the defendant ever having gone to treatment itself, in a situation where he's not actually going to go to treatment for 64 months, because that's the term of his prison custody. And I don't know how the district court could, in that situation, anticipate what drugs might be needed. Well, who is the burden? Who should the burden be on? I mean, suppose he does go into this treatment and there is some psychotropic medication that is imposed on him that maybe is more intrusive and would fall within Williams. Should the burden be on the government to come in and get the condition changed so that he's required, you know, get a judge's decision that he's required to take that or not? Or is the burden on the defendant to come in and file a motion and say, oh, my God, they're going to give me this drug that's really, you know, I can't take. It hasn't been proven effective. The burden is my burden. It's the burden of the government. But I want to clarify what we're talking about here. Even though the Williams decision discusses psychotropic medication, it limited that definition to strictly antipsychotic drugs and antiseizure or epileptic-type drugs. So how do we know that they won't be prescribed in this case? I think it's more of a notice provision to the defendant that as part of your treatment, you are going to have to comply with all aspects of the treatment, the objective testing, as well as the medication. And the potential use of psychotropic drugs, right? Potentially, yes, Your Honor. But to the extent that before the district. How can we sustain that? I'm sorry, Your Honor. How can we sustain that? Absent a finding, absent any definition of the medication, how can we sustain that? Well, and I think we would be in a different situation if the district court had specifically ordered the involuntary. We're not restraining Mr. Grennan, holding him down and forcing him to take pills. How do we know? How do we know? It's so broad and it's overbroad and vague, and we don't know. So how do we know we're not going to be doing that? Well, what we would do in that particular situation is this is an outpatient procedure, an outpatient treatment. There is no inpatient treatment here. He would be prescribed the medication. He refuses to take it. Well, what would happen is they would go to the district court and say he is refusing to take the medication. At that point. That would be a violation of his supervised release at that point, and he could be resentenced. He could be reincarcerated for that. His supervised release could be revoked for that, yes. But given this particular factual situation. It's a pretty severe sanction, but, you know, given the vagueness of the condition. And what I'm saying here is given this particular factual situation, that is not going to happen. Judge Carter. I wish I could be so sure about the future as you are. You know, how do we know? Well, also, I mean, you seem to be, and Judge Carter is a person of great goodwill. I think everybody would attest to that. But we don't judge that based on his characteristics. We judge it based on a generic judge who might be substituted for Judge Carter in the future. So you're basing a lot of your argument on the fact that Judge Carter is a good guy. Which we all agree he is. Let me say Judge Carter is a good guy, Your Honor. Which we all agree he's a good guy. Nothing but positive things to say about Judge Carter. But, again, I just would emphasize that this is different than Williams. And under a plainly erroneous standard, I think that the court can affirm in that situation. Thank you. Thank you for the argument, and thanks. Mr. Buttle. Your Honor, with respect to the forced medication, as Judge Waterloo pointed out, the government can certainly always come back and seek a modification if at some point in the course of treatment it's determined that Mr. Grennan needs to take medication. And that burden would be on the government, as it should always be. I would submit this is worse than Williams. Williams, in fact, there was a history of the need for forced medication and the need for psychotropic drugs. And Williams, by the way, it didn't — while psychotropic drugs was discussed, it went beyond that and discussed all medications. This doesn't discuss any medications. There's no background whatsoever for why it's needed here. I would note, with respect to the ABLE testing, the district court did have a case cited to it, United States v. Whitehorse, at excerpts of Record 83. That was one of the bases for our objection to the ABLE testing, and that case is one of the cases that's also discussed in the Burtsville decision. And I would also note there was some discussion about there doesn't need to be any justification given so long — well, that there just doesn't need to be any justification given under Reardon for any condition that's imposed unless it meets the heightened standard of Williams and Weber. That's just simply not true. When one reads the Reardon decision, what this Court said was no justification is needed so long as it is clear from the record why the Court imposed a particular condition. So if the — if this Court can look at the entire record and can look at what the Probation Office recommended and the basis given by the Probation Officer for that recommendation, then this Court can affirm without a specific explicit explanation from the district court. But if there's nothing in the record, which is what we submit is the case here, then it's not sufficient under Reardon. And I will file a 28-J letter with the Court on the Burtsville decision this afternoon. Actually, after the argument, you can give it to Rob, the citation on what we call a gum sheet, and he'll get it to everybody, including the government. Okay. Thank you very much. The case is here to be submitted.
judges: Canby, Thomas, Wardlaw